2129 - Served
2229 - Not Served
2329 - Served by Mail  (This form replaces CCCH 0060)

(Rev. 8/23/01) CCG 0600

## IN THE NAME OF THE PEOPLE OF THE STATE OF ILLINOIS
### COUNTY DEPARTMENT/ _____CHANCERY_____ DISTRICT/DIVISION

Nicholas Lobacz

v.

The City of Chicago, et. al.

Court Case No.: 13 CH 03378

Court Date: _____

Court Time: _____ Room No.: _____

## SUMMONS IN ADMINISTRATIVE REVIEW

To each defendant: *The City of Chicago*

YOU ARE SUMMONED and required to file an answer in this case or otherwise file your appearance in the office of the Clerk of this Court located at ☑ Chancery Division, Room 802   ☐ County Division, Room 1202, Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois 60602, within 35 days after the date of this summons.

This summons is served upon you by registered or certified mail pursuant to the provisions of 735 ILCS 5/3-101, et seq.

Atty. No.: 36443

Name: Wesley E. Johnson

Atty. for: Nicholas Lobacz

Address: 105 W. Madison Street, Suite 1500

City/State/Zip: Chicago, IL 60602

Telephone: (312) 752-4828

WITNESS: _____

FEB 0 7 2013

DOROTHY BROWN  Clerk of Court

7011 1150 0000 9286

## CERTIFICATE OF MAILING

On _____February 7_____, 2013, I sent by certified mail a copy of this summons to each defendant addressed as follows:

| Defendant | Address |
|---|---|
| The City of Chicago | 121 N. LaSalle St. #107A, Chicago, IL 60602 (7754) |
| The City of Chicago Human Resources Board | 121 N. LaSalle St. #107A, Chicago, IL 60602 (7761) |
| John F. Hannah | 121 N. LaSalle St. #107A, Chicago, IL 60602 (7778) |
| Samuel Evans, Jr. | 121 N. LaSalle St. #107A, Chicago, IL 60602 (7785) |

Dated: _____ FEB 0 7 2013

DOROTHY BROWN

Clerk of Court

EXHIBIT
A

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FIRM ID. #36443

### CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT, CHANCERY DIVISION

NICHOLAS LOBACZ,              )
      Plaintiff,            )
      v.                    )
                    )  Case No.
THE CITY OF CHICAGO, THE CITY OF   )
CHICAGO HUMAN RESOURCES BOARD,  )
JOHN F. HANNAH, and SAMUEL EVANS,  )
JR.                           )
      Defendants.

2013CH03378
CALENDAR/ROOM 07
TIME 00:00
Admin Review

## COMPLAINT

1.    Plaintiff Nicholas Lobacz is an individual who resides at 6323 W. 64th Place Unit 3D, Chicago, IL.

2.    The City of Chicago is a municipal corporation duly organized under the laws of Illinois.

3.    At all relevant times, the Human Resources Board of the City of Chicago ("*HRB*") is the entity which, upon request, reviews City of Chicago employee terminations. Its decisions are final.

4.    At all relevant times, John F. Hannah was the Chairman of the HRB. Samuel Evans, Jr. was a member of the HRB.

1

## COUNT I

### Petition for Writ of certiorari

5.      Mr. Lobacz began his employment with the City on September 2008 as an operating engineer at the Western Avenue pumping station. Mr. Lobacz was a career service employee and could not be fired without cause.

6.      From 1995 to May 2008, Mr. Lobacz rented a small apartment at 6934 W. 16th St., Berwyn, IL (The "*Berwyn Address*") on a month to month basis.

7.      His rent included an area of the basement where he ran a small appliance and electronics repair business.

8.      In May of 2008, while trying to land a job with the City, Mr. Lobacz, cognizant of the City's residency requirements, entered into a written lease for an apartment at 1476 W. Ohio St., Chicago, IL. (The "*Chicago Address*").

9.      He relinquished his apartment in Berwyn and his fiancée, Jamie Terry, moved in and signed a lease. Mr. Lobacz retained his basement space to run his business.

10.     Mr. Lobacz intended to, and in fact did, change his domicile from the Berwyn Address to the Chicago Address.

11.     The City claims that sometime in 2010 it received an anonymous tip that Mr. Lobacz was not a resident of the City.

12.     The City then conducted an investigation of Mr. Lobacz that ran from June 2010 until February 2012 that had the City following him, videotaping him, and digging through trash at both the Chicago and Berwyn addresses.

13.     Mr. Lobacz was discharged by the City on September 6, 2012 for allegedly not being a resident of Chicago. He filed a timely appeal of his discharge which was heard by Hearing Officer Angela R. Murphy.

2

14.     Hearing Officer Murphy concluded that the City failed to meet its burden of proof that Mr. Lobacz was not a resident of Chicago. Her decision, explaining her reasoning and detailing the evidence presented by both sides, is attached as **Exhibit A** (sans exhibits).

15.     In spite of Hearing Officer Murphy's recommendation, the HRB voted to sustain the discharge of Mr. Lobacz. HRB Chairman John F. Hannah and HRB member Samuel Evans, Jr. voted in favor of the City, but HRB member Enrico Mirabelli dissented, voting to reinstate Mr. Lobacz with back pay. The HRB's decision is attached as **Exhibit B.**

16.     On October 29, 2012, Mr. Lobacz filed a Charge of Discrimination against the City alleging that the City had discriminated against him and retaliated against him for filing a worker's compensation claim. The Charge is attached as **Exhibit C.**

17.     On November 2, 2011, Mr. Lobacz received a Right to Sue letter. **Exhibit D.**

18.     Mr. Lobacz requests a judicial review of the HRB's decision because the decision is contrary to the manifest weight of the evidence and was arbitrary, capricious and an abuse of discretion.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a writ of certiorari requiring the HUMAN RESOURCES BOARD OF THE CITY OF CHICAGO to submit the records of its proceedings and decision in connection with Plaintiff's discharge to this Court for review;

B. Set aside the HUMAN RESOURCES BOARD OF THE CITY OF CHICAGO'S findings and decision as contrary to law and evidence;

C. Issue an order requiring the CITY OF CHICAGO to reinstate Plaintiff with all seniority rights that he would have accrued at the time of judgment but for the wrongful discharge, and requiring the CITY OF CHICAGO to award Plaintiff back-pay and back benefits;

D. Award Plaintiff attorneys' fees and costs; and

E. For such other and further relief as this Court deems equitable and just.

## COUNT II

### Retaliation
### (City of Chicago Only)

19. Plaintiff reincorporates paragraphs 1 through 18.

20. Mr. Lobacz filed a worker's compensation claim while employed by the City.

21. The City's real reasons for conducting an extensive investigation and terminating him include retaliation for filing a worker's compensation claim.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue an order requiring the CITY OF CHICAGO to reinstate Plaintiff with all seniority rights that he would have accrued at the time of judgment but for the wrongful discharge, and requiring the CITY OF CHICAGO to award Plaintiff back-pay and back benefits;

B. Award Plaintiff attorneys' fees and costs; and

C. For such other and further relief as this Court deems equitable and just.

## COUNT III

### Violation of Americans with Disabilities Act
### (City of Chicago Only)

22. Plaintiff reincorporates paragraphs 1 through21.

23. The City's real reasons for conducting an extensive investigation and terminating him include discrimination against him for a disability: arthritis.

24. The City was aware that Mr. Lobacz had arthritis.

25. The arthritis did not adversely affect Mr. Lobacz' job performance or predispose him to injury.

WHEREFORE, Plaintiff respectfully requests that this Court:

4

A.  Issue an order requiring the CITY OF CHICAGO to reinstate Plaintiff with all seniority rights that he would have accrued at the time of judgment but for the wrongful discharge, and requiring the CITY OF CHICAGO to award Plaintiff back-pay and back benefits;

B.  Award Plaintiff attorneys' fees and costs; and

C.  For such other and further relief as this Court deems equitable and just.

Respectfully Submitted,

**Nicholas Lobacz**

One of His Attorneys

Dated: February 4, 2013

Wesley E. Johnson
GOODMAN TOVROV HARDY & JOHNSON LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828
Fax: (312) 264-2535
wjohnson@wesleyjohnsonlaw.com

*HEARING OFFICER REPORT*



# HUMAN RESOURCES BOARD

## CITY OF CHICAGO

December 28, 2012

Nicholas Lobacz
6323 W. 64th Place – Unit 3-D
Chicago, IL 60638

Re: Nicolas Lobacz
12 HRB 037

Dear Mr. Lobacz:

Enclosed is a copy of the Hearing Officer's Report in the above referenced case.

Sincerely,

John F. Hannah
Chairman

JFH/kbs
Encl.

Cc: Josh Friedman
Attorney at Law

# HUMAN RESOURCES BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF

Nicholas Lobacz,                                   12 HRB 037
Operating Engineer,
Department of Water Management

## HEARING OFFICER'S REPORT
## TO THE HUMAN RESOURCES BOARD

STATEMENT OF THE CASE:   Appeal of discharge for violation of Human Resources Rule XVIII, Section 1, subparagraphs (6), dealing with failing to disclose information requested and/or providing false or misleading information on a City of Chicago form; (11), dealing with falsification of employment records; (15), dealing with engaging in any act or conduct prohibited by the Municipal Code of the City of Chicago, in particular Chapter 2-152-060 in that he was not an actual resident of the City; (41), dealing with failure to be an actual resident of the City of Chicago; and/or (50), dealing with conduct unbecoming a public employee.

This case was based on an anonymous complaint made to the Office of the Inspector General, alleging that the Respondent was not an actual resident of the City of Chicago.

DATE OF HEARING: November 6, 2012, November 16, 2012.

HEARING OFFICER:  Angela R. Murphy

APPEARANCES: Daniel Myerson, Assistant Corporation Counsel, appearing for the City. The Respondent appeared and was represented by Josh Friedman, attorney-at-law.

WITNESSES:    The City called the Respondent; Matthew Hart, Investigator Specialist, Office of the Inspector General; Hector Arellano, Assistant Chief Investigator, Office of the Investigator General.

The Respondent called Jennifer Nelson; Tania Kaszuba, his sister; and Peter Andrich, his longtime friend. The Respondent also testified in his own behalf on rebuttal.

Exhibits:

City Exhibit 1 – – Statement of charges
City Exhibit 2 – – Discharge letter 9/6/12
City Exhibit 3 – –Four-page affidavits of residency
City Exhibit 4 – –Transcript of interview (118 pages)

City Exhibit 5 - -Com Ed records
City Exhibit 6 - -Nicor Gas records
City Exhibit 7 - -Statement of Berwyn postmaster (no change of address)
City Exhibit 8 - - Ally Financial (auto loan)
City Exhibit 9 - -Bankruptcy petition (mailing address, Berwyn; street address, Chicago)
City Exhibit 10 - -Photos of mail (in Berwyn alley)
City Exhibit 11 - -Photos of car
City Exhibit 12 - -Founders Insurance documents
City Exhibit 13 - -Safeway Insurance documents
City Exhibit 14 - -Verizon document
City Exhibit 15 - -PNC Bank
City Exhibit 16 - -MD Financial
City Exhibit 17 - -MD Financial (images of checks)
City Exhibit 18 - - Subpoena for Andrich for 7/6/12 testimony
City Exhibit 19 - - County Clerk record of voter registration
City Exhibit 20 - - Investigator Hart report
City Exhibit 21 - - Surveillance video 12/11/11
City Exhibit 22 - - Surveillance video 12/17/11
City Exhibit 23 - - Tijerina subpoena
City Exhibit 24 - - Photo showed to Siebert
City Exhibit 25 - - Subpoenas for Denise and Anthony Siebert
City Exhibit 26 - - Inventory of garbage
City Exhibit 27 - - Ohio Street
City Exhibit 28 - - Tijerina interview report


Respondent Exhibit 1 - -New hire 7/28/08, O'Hare Airport
Respondent Exhibit 2 - -Employee Eligibility Verification, US Department of Justice
Respondent Exhibit 3 - -W-4
Respondent Exhibit 4 - -Illinois drivers license, Class DM
Respondent Exhibit 5 - -Registration plate transfer, 2010 Chevrolet
Respondent Exhibit 6 - - Credit application (Phelan Chevrolet)
Respondent Exhibit 7 - - Vehicle title (2010 Malibu)
Respondent Exhibit 8 - - Vehicle registration (2006 Mercury)
Respondent Exhibit 9 - - Vehicle sticker (Chicago 9/11)
Respondent Exhibit 10 - - City of Chicago Credit Union
Respondent exhibit 11 - - City police traffic victim report
Respondent Exhibit 12 - -CVS refill reminder
Respondent Exhibit 13 - - Berwyn Public Storage


**SUMMARY OF PROCEEDINGS:** The Respondent began his employment with the City in about September 2008. He worked as an operating engineer at the Western Avenue pumping station. It is undisputed that, from about 1995 to about May 2008, the Respondent rented a small apartment at 6934 W. 16th St., Berwyn, Illinois (hereafter referred to as "the Berwyn address.")

His rent at that address included part of the basement, from where he ran a small appliance and electronics repair business. For the first year of his tenancy, he had a lease. After that, he paid cash on a month-to-month basis. His landlord was Harry Rubenstein, a friend of forty years, who lived on the first floor of the building (T 17-18). His rent was approximately $650 per month.

According to the Respondent, about the time that he began his employment with the City, he moved to the first floor of a two flat at 1476 W. Ohio Street in Chicago (hereafter referred to as "the Ohio Street address.") At that location, he shared a three bedroom apartment with an old friend named Peter Andrich. The two men grew up in the neighborhood, where the Respondent attended Holy Innocents Church and grade school. Andrich knew that the Respondent was looking for an apartment in the City and told him that he [Andrich] had a spare bedroom since his brother had recently moved out. Over the summer of 2008, the Respondent moved some of his belongings into the Ohio Street address. He moved other items into storage. The Respondent paid Andrich approximately $540 per month, which included garage space. The Respondent did not have any kind of a written rental agreement with either Andrich or the owner of the building, whose family lived on the second floor (T 25-28).

Peter Andrich testified that he did indeed rent a room to the Respondent at the Ohio Street address. He estimated that the Respondent spent five or six days a week at the Ohio Street address. He noted that he and the Respondent work different hours and that, consequently, he only saw the Respondent every few days (T121-122).[1]

According to the Respondent, he became engaged to a woman named Jamie Terry in 2008. She worked as a waitress in Berwyn. She moved to the Berwyn address in the summer of 2008. He acknowledged that he visited her there, staying overnight, at least two or three times per week. He occasionally helped her out with the rent when she could not make full payment. He kept the gas and electric bills in his name because he knew that changing them would require her to make a deposit (T 36-40). He kept a few personal items there. He also kept some tools there, because he continued to run his repair business out of this address. Part of his business was an eBay business. He continued to use the address for convenience, since Ms. Terry and Ms. Rubenstein were at home during at least part of the day and could receive his packages (T 44).[2]

According to the Respondent, his intention at the time that he was hired by the City was to get married and purchase a small condo in the City. At that time, however, the City had started furloughs and layoffs. The Respondent was afraid that, if he purchased a condo, he would get laid off, so he decided to keep renting until he had a longer work relationship with the City (City Exhibit 4, page 44).

---

[1] The Respondent worked what he referred to as a rotating schedule. On Wednesday and Thursday, he worked from 10 PM to 6 AM. On Saturday and Sunday, he worked from 2 PM to 10 PM. On Sunday nights, he works a back-to-back schedule, from Sunday at 10 PM until Monday morning at 6 AM (City Exhibit 4, page 15).

[2] The hearing officer notes that Ms. Terry did not testify at the hearing. According to the Respondent, he and Ms. Terry no longer have a relationship. The Respondent currently lives at 6323 W. 64th Place in Chicago.

The Office of the Inspector General received an anonymous complaint that the Respondent, though a City employee, was not a City resident. The Inspector General conducted an investigation from June 2010 through February 2012, although, for the purposes of the hearing, the City did not rely on any surveillance of the Respondent prior to March 2011 (T 12). Investigator Specialist Matthew Hart testified that he conducted surveillances that began at the Berwyn address approximately fifteen times. He also began several surveillances at the Respondent's workplace. Hart testified that he saw the Respondent or his vehicle at the Berwyn address on eighteen occasions. Hart also began five surveillances at the Ohio Street property. He testified that he did not observe the Respondent at that address at any time (T130-131).[3]

Hart identified surveillance videotapes that he made on December 11, 2011 (City Exhibit 21) and December 17, 2011 (City Exhibit 22). These videotapes show the Respondent at both the Berwyn address and at the worksite.

On February 28, 2012, Hart visited the Berwyn property. He observed that the mailbox at that time had the Respondent's name crossed out and "J. Terry" written in (T155-156). On that date Hart interviewed a neighbor, Tony Seibert, showed him a picture of the Respondent and asked if

---

[3] Chronology of surveillances:

- Hart testified that, on March 24, 2011 he began a surveillance at the Berwyn address at 5:30 AM. At approximately 6:30 AM he saw the Respondent parking his vehicle in front of the residence. Hart checked the Respondent's time records and concluded that the Respondent was returning from work (T135).
- On March 31, 2011, Hart observed the Respondent's car parked in front of the Berwyn address, although he did not observe the Respondent. City time records indicated that March 31 was not a work day for the Respondent (T136).
- On April 11, 2011, Hart observed the Respondent arriving at the Berwyn address at the end of his work. On that date, Hart cut out of his car and walked up to me front door of the residence. He saw the Respondent's name on one of the mailboxes here and on a doorbell (T137).
- On April 21, 2011 neither the Respondent nor his car were observed that the Berwyn address. Hart testified that this was the only surveillance during which neither the employee nor his car were observed at the Berwyn address (T138). On April 29, 2011 Hart began his surveillance yet the Respondent's worksite at 49th and Western. Hart tried to follow the Respondent but lost sight of him in traffic. Hart later saw the Respondent's Chevy Malibu at the Berwyn address (T138-139).
- On June 27, Hart again began surveillance at the Water Management site, lost the Respondent in traffic, but located him again at the Berwyn address (T139-140).
- On July 28, Hart conducted a surveillance at the Berwyn address. Hart assigned another investigator to do surveillance at the Ohio Street address. Hart saw the Respondent at the Berwyn address, whereas the other investigator failed to see the Respondent at the Ohio Street address (T140-141).
- On August 17, 2011 Hart observed the Respondent the Berwyn address at approximately 8:47 PM. Hart noted that the surveillances were scheduled in order to align with the Respondent's irregular work schedule (T143).
- On August 29, the Inspector General's office again did a surveillance at both residences. Hart observed the Respondent's car at the Berwyn property, whereas the investigator at the Ohio Street property did not see him there (T144-145).
- On November 2, at 8:52 PM, Hart's report indicates that the investigator was unable to make a positive identification of the person exiting the Berwyn address because it was too dark to do so. Hart drove to the work address, where, at 9:43 PM, Hart was able to conclusively identified the Respondent as he arrived at work (T145-146). A second investigator was conducting a surveillance on the Ohio Street property in the evening on that date and did not see the Respondent (T146-147).

Seibert regularly saw the Respondent in the area of the Berwyn address. According to Hart Seibert indicated, yes (T157-158).

On March 2, 2012, Hart interviewed another resident of the neighborhood, Denise Siebert, and showed her a picture of the Respondent. According to Hart, Siebert recognized the Respondent as someone who was regularly in the area (T156-157). Hart acknowledged that, although both of the Seiberts reported that they recognized the Respondent from the photos that were shown to them, they also said that there were sometimes several weeks in which they did not see him at the Berwyn residence. The Seiberts were subpoenaed but failed to appear at the hearing (T158).

Hart testified that, on December 19, 2011, he examined the trash that was in the barrels belonging to the Berwyn address. There were envelopes from approximately nine pieces of mail that were addressed to the Respondent (City Exhibit 10). On December 27, 2011, he examined trash behind the Ohio Street property and found no documents or other items that related to the Respondent (T164).

Another IG investigator, Hector Arellano, visited the Ohio Street address on February 27, 2012. He observed the names "Andrich, Lobacz" on one of the mailboxes. He interviewed the occupant of the second floor apartment, Maria Tijerina. Tijerina related that she had lived in the apartment for approximately forty years. She stated that she leases her apartment from her brother, who owns the Ohio Street property. She refused to provide investigators with a name and contact information for her brother. She stated that an older gentleman lived alone in the first floor apartment. When shown a copy of a photo of the Respondent, she said she did not recognize him. She also said that she did not recognize his name (City Exhibit 28).

Both the Respondent and the City produced various official documents on which the Respondent had used either he has Berwyn address or his Ohio Street address. A sampling of these documents is listed below:

- A retail installment contract dated March 2010 for the purchase of a new Chevrolet Malibu, using the Ohio Street address; along with related paperwork from Ally Bank regarding a loan for this Chevy Malibu, bearing the Berwyn address (City Exhibit 8)

- A notice of a bankruptcy filing from 1998, showing the Berwyn address; and also a notice of a second bankruptcy petition, dated March 2011, showing the Ohio Street address as the street address and the Berwyn address as the mailing address of the debtor; also showing his month-to-month lease with Peter Andrich at the Ohio Street address on Schedule G, and showing no other lease (City Exhibit 9)

- Photographs of a temporary parking placard from Berwyn that was seen hanging in the Respondent's car, along with two City of Chicago vehicle stickers displayed on the windshield (City Exhibit 11)

- An application for car insurance giving the Berwyn address; also showing an affirmative answer to the question "Do you and all regular drivers listed below live at the above address at least 10 months out of year?" Also a bill from Founders Insurance for the Chevy Malibu showing the Berwyn address (City Exhibit 12)

- Numerous documents from the Safeway Insurance Company for coverage on a 1995 Saturn for 2011, showing the Berwyn address (City Exhibit 13)

5

- Statements from August through December 2011 showing numerous banking transactions with PNC Bank or ATMs belonging to that bank in Berwyn, Cicero, Forest Park, Oak Park, Hinsdale, Chicago and other locations; also printed checks, written in 2011, some of which bear the Ohio Street address and some of which, from another account, bear the Berwyn address (City Exhibit 15)

- Numerous documents from MB Financial Bank showing statements from March through December 2011, showing the Berwyn address; also evidence of a new account opened in December 2011 at the bank's branch in North Riverside, showing the Ohio Street address; he also numerous printed checks dated from March through December 2011, showing the Ohio Street address (City Exhibit 16 and 17)

The following documents, all showing the Ohio Street address:

- Chicago Police Department "New Hire" information, dated July 2008 (Respondent Exhibit 1)

- US Department of Justice Employee Eligibility Verification, dated July 2008 (Respondent Exhibit 2)

- IRS form W-4 for the year 2008, dated September 2008 (Respondent Exhibit 3)

- Illinois drivers license issued July 2008 (Respondent Exhibit 4)

- Illinois Secretary of State license plate transfer for a 2010 Chevrolet, document dated March 2010 (Respondent Exhibit 5)

- Credit application, Phelan Chevrolet dated March 2010 (Respondent Exhibit 6)

- Vehicle title, Chevy Malibu 2010, document issued April 2010 (Respondent Exhibit 7)

- Vehicle registration, 2006 Mercury utility vehicle, dated March 2010 (Respondent Exhibit 8)

- City of Chicago vehicle sticker application for 2008 (Dodge Stratus); for 2009 (Chevy Malibu); for 2010 (for Chevy Malibu); for 2011 (Chevy Malibu) (Respondent Group Exhibit 9)

- City of Chicago Credit Union beneficiary reminder, 2011 (Respondent Exhibit 10)

- City of Chicago, Police Department traffic victim report, dated January 2012 (Respondent Exhibit 11)

- CVS prescription refill reminder, dated October 2011 (Respondent Exhibit 12)

- Public Storage account receipt, September 2010 (Respondent Exhibit 13)

## FINDINGS AND RECOMMENDATIONS:

The City's fundamental argument is that a person can never have more than one true residence and that a key component of acquiring a new residence is abandoning the old one. The City points out that, according to the IG's surveillance, the Respondent continued to live his life in Berwyn and never became an actual resident of Chicago. He conducted most of his personal business, such as shopping and banking in the suburbs. The City maintains that, in deciding questions of residence, a person's declarations are less important than their actions.

The Respondent's fundamental argument is that, when he moved to Chicago, his social and business contacts in the suburbs did not automatically end. He had specific reasons for continuing to spend time in the suburbs: his girlfriend was there, his childhood friend was there, he frequented businesses in that area, and he did small repair jobs there. Counsel for the Respondent notes that the investigators spent three to four times as much time surveying the Berwyn property as they did the Ohio Street property; naturally they saw him more at the Berwyn property. The next-door neighbors in Berwyn, the Seiberts, both stated that they sometimes did not see the Respondent for weeks at a time.

Moreover, the Respondent argued, accepting the City's argument would require that the Board believe that the Respondent concocted an elaborate plan to give false information, not just to the City, but to third parties such as the US Bankruptcy Court, the IRS, Immigration and Naturalization, the Chicago Police Department, the Illinois Department of Motor Vehicles, and MB Financial. He had no reason to believe that the City would ever see the documents that he submitted to these third parties. The bankruptcy petition, the Respondent maintains, is particularly telling. Not only was it intended to go to the federal government, not only does it state that his residence was in the City, it also lists on Schedule G the month-to-month leasehold that he had with Mr. Andrich -- his sole lease.

As the hearing officer reviewed the mountain of evidence presented in this case, the only conclusion that she could make with confidence is that the Respondent wanted to "have it both ways." He wanted to establish a residence in the City and, at the same time, maintain the business and social contacts that he had in the suburbs. Certainly there is nothing wrong with maintaining contacts in the suburbs. In the hearing officer's view, the question is, did he do enough to establish a residence in the City.

In the hearing officer's judgment, the Respondent did what he thought would be sufficient to establish the City of Chicago as his actual residence. The hearing officer was persuaded by the evidence that his ultimate intention was, as he claimed, to purchase a condo in the City. Surely the late summer of 2008 would have been the worst time since the Great Depression to purchase real estate. Given that economic background, renting a room from a friend seems to have been a reasonable transition from renting an apartment in the suburbs to owning a residence in City. The hearing officer finds that the Respondent's intention was crucial in this case.

The hearing officer is struck by the contrast between the Respondent's situation and what she thinks of as the typical residency scenario -- a married man who owns a house in a suburb, where his children attend school, and where his wife, from whom he is "separated," maintains the household. The Respondent is in a comparatively footloose situation. His strongest tie to Berwyn, aside from his erstwhile girlfriend, seems to have been his workshop in the basement of his friend's building.

Based on the totality of the evidence the hearing officer finds that the City has not proven by a preponderance of the evidence that the Respondent was not an actual resident of the City from the time he began to work for the City in 2008 until his discharge in September 2012.

Respectfully submitted,

Angela R. Murphy
Hearing Officer

Chicago IL
Date: December 28, 2012



# HUMAN RESOURCES BOARD
## CITY OF CHICAGO

January 16, 2013

Nicholas Lobacz
6323 W. 64th Place - Unit 3D
Chicago, IL   60638

Re: Nicholas Lobacz
   12 HRB 037

Dear Mr. Lobacz:

 Enclosed is a copy of the Human Resources Board's Findings and Decision in the above captioned matter.

      Sincerely,

      *Pastor John F. Hannah*
      Pastor John F. Hannah
      Chairman

JFH/kbs
encl.

cc: Josh Freidman
  Attorney at Law

HUMAN RESOURCES BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF

Nicholas Lobacz,                                    12 HRB 037
Operating Engineer,
Department of Water Management

### FINDINGS AND DECISION:

The Human Resources Board of the City of Chicago hereby certifies the following to the Commissioner of Human Resources:

That the Human Resources Board, pursuant to its duties and powers under Chapter 25.1 of the Municipal Code of the City of Chicago, duly appointed a Hearing Officer, Angela R. Murphy, to hear the above-captioned cause;

That notice was given to all parties and that a hearing was held on November 6 and November 16, 2012.

The City was represented by Daniel Myerson, Assistant Corporation Counsel. The Applicant appeared and was represented by Josh Friedman, attorney at law.

The Hearing Officer certified the following findings to the Human Resources Board:

1. The City discharged the Respondent for violation of Human Resources Rule XVIII, Section 1, subparagraphs (6), dealing with failing to disclose information requested and/or providing false or misleading information on a City of Chicago form; (11), dealing with falsification of employment records; (15), dealing with engaging in any act or conduct prohibited by the Municipal Code of the City of Chicago, in particular Chapter 2-152-060 in that he was not an actual resident of the City; (41), dealing with failure to be an actual resident of the City of Chicago; and/or (50), dealing with conduct unbecoming a public employee.

2. The City offered evidence to show that surveillance by investigators of the Office of the Inspector General revealed that, in 2011, either the Respondent or his car were observed at 6934 W. 16th St. in Berwyn on eighteen of the nineteen times that investigators were present. By contrast, the respondent's car was observed only once at 1476 W. Ohio St., which the respondent

claimed was his actual address. The City notes that the Respondent used both of these addresses at various times on official paperwork during his employment with the City.

3. The Respondent stated that, although he maintained social and business ties in the near western suburbs, where he had lived for many years before taking a job with the City, he lived at and paid rent at 1476 W. Ohio St., Chicago, which was his actual address during the time that he was employed by the City.

## DECISION OF THE HUMAN RESOURCES BOARD

On the basis of the foregoing findings, and following a full discussion, it is the decision of the majority of the Human Resources Board to sustain the discharge of the Respondent, Nicholas Lobacz.

### HUMAN RESOURCES BOARD OF THE CITY OF CHICAGO

_____
Chairman

_____
Member

Board member Enrico Mirabelli respectfully dissents from the Board's decision. Based on the arguments presented on the record, Mr. Mirabelli votes to accept the hearing officer's recommendation to reinstate the Respondent with full back pay.

_____
Member, dissenting

Dated: January 15, 2013

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2013-00377 |

Illinois Department Of Human Rights                                    and EEOC
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Nicholas Lobacz | (708) 203-6000 | 06-10-1952 |

Street Address                     City, State and ZIP Code
6323 W. 64th Place, #3d, Chicago, IL 60638

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CITY OF CHICAGO WATER DEPARTMENT | 500 or More | (312) 747-0508 |

Street Address                     City, State and ZIP Code
333 S. State St., Chicago, IL 60607

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                     City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                     Latest
                              09-06-2012

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on or about September 2, 2008. My most recent position was C Engineer. Respondent was aware of my disability. During my employment, I pursued a worker's compensation claim against Respondent. Subsequently, on or about September 6, 2012, I was discharged.

I believe I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

OCT 2 9 2012

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Oct 29, 2012
Date          Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 161 (11/09)                        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Nicholas Lobacz<br>6323 West 64th Place, Apt. 3D<br>Chicago, IL 60638 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2013-00377 | Roberto Flores,<br>Investigator | (312) 869-8176 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.) *90 DAYS = FEB 4 2013*

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

| | On behalf of the Commission | |
|---|---|---|
| Enclosures(s) | *John P. Rowe*<br>John P. Rowe,<br>**District Director** | 11/2/12<br>*(Date Mailed)* |

cc:    **CITY OF CHICAGO WATER DEPARTMENT**